IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA          *
                                  *
            v.                    *      CR 115-069
                                  *
BRIAN WILSON                      *

**O R D E R**

In the captioned criminal matter, Defendant Brian Wilson was tried by United States Magistrate Judge Brian K. Epps on January 7, 2016.[1] By agreement of the parties, the Magistrate Judge proceeded directly into a sentencing hearing; having been found guilty as to one violation of 38 U.S.C. § 901(c) (Violating a Department of Veterans Affairs Security and Law Enforcement Regulation),[2] Defendant was sentenced to ninety (90)

---

[1] Defendant was originally charged with two counts of Violating a Department of Veterans Affairs Security and Law Enforcement Regulation in violation of 38 U.S.C. § 901(c). (Doc. 1.) On January 7, 2016, a bench trial was held before the Magistrate Judge on these two counts, at which Defendant was found guilty of one of the two counts.

[2] The specific regulation Defendant was found to have violated provides that "[c]onduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly is prohibited. In addition to measures designed to secure voluntary terminations of violations of this paragraph the head of the facility or designee may cause the issuance of orders for persons who are creating a disturbance to depart the property. Failure to leave the premises when so ordered constitutes a further disturbance within the meaning of this rule, and the offender is subject to arrest and removal from the premises." 38 C.F.R. § 1.218(a)(5).

days imprisonment.[3] (Doc. 30; see also Trial Transcript, Doc. 41, at 178-182, 207.) The Magistrate Judge's Judgment and Commitment Order was entered on January 13, 2016. (Id.)

On January 20, 2016, Defendant appealed his conviction to this Court.[4] (Doc. 31.) After several continuances, Defendant timely filed his brief in support of his Notice of Appeal on July 1, 2016. (Doc. 43.) To date, the Government has failed to file a response.

Defendant raises one issue on appeal. He contends there was insufficient evidence to support the Magistrate Judge's finding that Defendant committed the relevant acts of disorderly conduct that underlie his conviction. Specifically, Defendant contends that the Government failed to prove beyond a reasonable doubt that he "engaged in conduct on the property of the Charlie Norwood Veterans Administration Medical Center, Uptown Division, that impeded or disrupted the performance of official duties by government employees, that prevented individuals from obtaining services provided on the property in a timely manner, or that involved the use of loud, abusive, or otherwise improper language." (Doc. 43, at 2.) In support of this enumeration of error, Defendant posits that his testimony at trial made clear

---

[3] Defendant was also ordered to pay a special assessment of $10.00. (Doc. 30, at 4.)
[4] "A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." FED. R. CRIM. P. 58(g)(2)(B).

2

that he did not engage in the alleged prohibited activity and that his "testimony contradicts [the] accounts [of the Government's witnesses], and raises significant doubts" as to whether his conduct violated the relevant regulation.[5] (Id.) Defendant therefore concludes that his conviction "is against the weight of the evidence provided at trial." (Id.)

This Court reviews the Magistrate Judge's findings of fact for clear error and his conclusions of law *de novo*.[6] See O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001) (citations omitted). The Court reviews *de novo* whether sufficient evidence supports a conviction, resolving all

---

[5] The parties stipulated that the elements required to establish the charge for which Defendant was convicted were: "(1) The defendant engaged in conduct on the property of the Charlie Norwood Veterans Administration Medical Center, Uptown Division that impeded or disrupted the performance of official duties by Government employees; that prevented individuals from obtaining services provided on the property in a timely manner; or that involved the use of loud, abusive, or otherwise improper language; (2) The Secretary of Veterans Affairs had lawfully and in consultation with the Attorney General promulgated Title 38, Code of Federal Regulations, Section 1.218 to provide for the maintenance of law and order and the protection of persons and property, and specifying therein rules for conduct on Veterans Administration property and penalties for violations of said rules; (3) Title 38, Code of Federal Regulations, Section 1.218 was conspicuously posted at the Charlie Norwood Veterans Administration Medical Center, Downtown Division; and (4) Title 38, Code of Federal Regulations, Section 1.218 forbids conduct on the property of the Charlie Norwood Veterans Administration Medical Center, Uptown Division that impedes or disrupts the performance of official duties by Government employees; that prevents individuals from obtaining services provided on the property in a timely manner; and that involves the use of loud, abusive, or otherwise improper language." (See Docs. 24, 25; see also Trial Transcript, at 4-6.) The parties also stipulated that the aforementioned elements numbers two (2) through four (4) were satisfied. (See Docs. 24, 25; see also Trial Transcript, at 4-6.) Defendant also admitted at trial that all of his relevant conduct occurred on the property of the Norwood Veterans Administration Medical Center, Uptown Division. (See Trial Transcript, at 5-6.)

[6] "The defendant is not entitled to a trial *de novo* by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." FED. R. CRIM. P. 58(g)(2)(D).

3

reasonable inferences in favor of the verdict. United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010) (citing United States v. Brown, 415 F.3d 1257, 1270 (11th Cir. 2005)). The Court must determine whether the evidence, construed in the light most favorable to the Government, would permit the trier of fact to find the defendant guilty beyond a reasonable doubt. Id. (citing Brown, 415 F.3d at 1270). The verdict will not be reversed unless no reasonable trier of fact could find guilt beyond a reasonable doubt. Id. (citing United States v. Schaltenbrand, 930 F.2d 1554, 1560 (11th Cir. 1991)). "The evidence may be sufficient even if it does not exclude every reasonable hypothesis of innocence." Schaltenbrand, 930 F.2d at 1560 (citing United States v. Lopez, 898 F.2d 1505, 1509 (11th Cir. 1990)).

Upon review, the Court concludes that a reasonable trier of fact could find that the evidence establishes, beyond a reasonable doubt, that Defendant engaged in disorderly conduct in violation of 38 U.S.C. § 901(c) and 38 C.F.R. § 1.218(a)(5). Five government witnesses testified as to Defendant's conduct.[7]

---

[7] See, e.g., Trial Transcript, at 27 ("When I asked [Defendant] if he would like me to walk . . . him to her office, he stated, 'If you get up and walk, it'll be the last.'"); at 38 ("[Defendant] was blocking my exit way. He was blocking the way that I could have used for an exit. He wasn't really standing still. He was kind of pacing, and with the pacing and what I felt like was a threat, I felt as if I had tried to remove myself from the situation there was some potential for me to be physically injured."); at 49-50 ("[Defendant] says, 'If you get up, it'll be the last time you get up.' . . . . I was scared to death."); at 60 ("[Defendant] was yelling obscenities and making racial comments."); at 61-62 (A: "[Defendant] turned around and

4

These witnesses' testimony support a finding that Defendant violated not just one, but all three, of the sub-factors of the relevant element for the offense of which Defendant was convicted; namely, that Defendant engaged in conduct that (i) impeded or disrupted the performance of official duties by government employees, (ii) prevented individuals from obtaining services in a timely manner, and (iii) involved the use of loud, abusive, or otherwise improper language. See, e.g., Trial Transcript, at 27, 38, 49-50, 60-62, 65, 67, 77, 102.

That the government witnesses' testimony is contradictory to that of Defendant's testimony is immaterial to whether sufficient evidence existed to convict Defendant. To resolve contradictory testimony is the factfinder's prerogative. See Brown, 415 F.3d at 1270 ("Questions about the weight given to testimony, as distinguished from the issue of its admissibility,

---

then said that we were f***ing idiots; we didn't know how to do our jobs; and continued to make racial comments." Q: "Can you describe the volume of the [D]efendant's voice when he did that?" A: "It was very loud. The entire time that we were out there speaking with him his volume was at an elevated level. The class that was sitting behind the glass partition, they were pretty much focused on us for the majority of the time." Q: "And is it a fair statement that they heard the [D]efendant's comments in the class?" A: "Yeah."); at 65 (Q: "You had mentioned that maybe more than one occasion the conversation that was taking place between [Defendant] and Captain Andrews was loud enough for people in the [adjoining] room to hear it. How do you know that?" A: "They were continuously looking at us. The class had completely stopped and they were focused on what was going on outside the classroom."); at 67 ("From the time that I arrived on the scene [Defendant] was in an elevated volume. He was yelling. He stayed at that level, basically, until the entire situation was resolved. He started to turn away after Paul Andrews said that he could go. He probably took a few steps before he turned and started yelling out more."); at 77 (Q: "When [Defendant] was complaining, was that disruptive to your class?" A: "Yes."); at 102 ("[Defendant] was very loud about everything he said disturbing everybody else that was in the area.").

5

are for the factfinder." (citing United States v. Hernandez, 141 F.3d 1042, 1052 (11th Cir. 1998))); Farley, 607 F.3d at 1333 ("It is not our function to make credibility choices or to pass upon the weight of the evidence. Instead, we must sustain the verdict where there is a reasonable basis in the record for it. That is no less true when the district court, instead of a jury, acts as the trier of fact." (internal quotations and citations omitted)); see also Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (citations omitted)). Here, the Magistrate Judge determined that Defendant's version of events, as compared to those versions put forth by the government witnesses, was not credible. (See Trial Transcript, at 179-182.) This Court will not disturb the Magistrate Judge's credibility determinations as nothing in the government witnesses' testimony is unbelievable on its face. See United States v. King, 267 F. App'x 851, 852 (11th Cir. 2008) ("Where, as here, the argument is that the [factfinder] based its conviction on inconsistent and contradictory testimony of

government witnesses, the appellant, to be entitled to any relief, must show that the testimony was incredible as a matter of law. For testimony of a government witness to be incredible as a matter of law, it must be unbelievable on its face. Put another way, the testimony must relate to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." (internal quotations and citations omitted)).

Accordingly, Defendant's Notice of Appeal is **DISMISSED** and the Magistrate Judge's Judgment and Commitment Order is hereby **AFFIRMED**.

**ORDER ENTERED** at Augusta, Georgia, this 29th day of September, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA